LONG *et al.* v. McFARLAND *et al.*

No. 6801.  Opinion Filed June 6, 1916.

Rehearing Denied August 29, 1916.

(159 Pac. 653.)

1.  **PLEADING—Surplusage—Striking Out.** Petition examined, and **held:** That certain allegations therein contained are surplusage, and that the court did right in striking them therefrom.

2.  **PLEADING—Motions—Striking Out Amendment.** Where plain-tiffs obtained leave to amend their petition by making it more definite and certain in certain particulars ordered by the court, and the amendment fails so to do, **held,** that the court did right in striking the amendment from the files.

(Syllabus by the Court.)

*Error from District Court, Hughes County;*
*John Caruthers, Judge.*

Action by Kizzie Long and others against R. M. Mc-
Farlin and others. Judgment for defendants, and plaintiffs
bring error. Affirmed.

*Lewis C. Lawson,* for plaintiffs in error.

*Harry H. Rogers,* for defendant in error McFarlin.

TURNER, J.    On March 31, 1913, in the district court
of Hughes county, Kizzie Long, Ellen Robinson, and Loday
Long, plaintiffs in error, sued R. D. McFarlin and Wisey
Long, defendants in error, to clear their title to 640 acres
of land, and for partition thereof and for rents and profits
since May 18, 1910. Their petition, comprising some dozen
pages of typewritten matter, substantially states:

That they are full-blood Creek Indians, duly enrolled
as such under certain acts of Congress, approved March 1,
1901, and June 30, 1902, known as the "Original" and
"Supplemental" Creek Agreements; that in the fall of
1899 Richard Long, an infant, died intestate, after which
there was selected for him and patented to his heirs a cer-
tain tract of land in that nation as his allotment; that
he left surviving the plaintiffs, Kizzie Long, his mother,
Loday Long, his sister, and Ellen Robinson, his half-sister.
also Sam Long, his father, Joshway, Hannah, Thomas and
Coley Long, his brothers and sister; that thereupon the
title to his allotment descended to plaintiff Kizzie Long,
his mother, under the laws of descent and distribution of
the Creek Nation therein set forth; that on June 3, 1902,
Sam Long, the father, died intestate in the Creek Nation,
leaving plaintiff Kizzie Long, his widow, and his children,
as stated, leaving also a certain tract of land described in
the petition as his allotment, which was duly selected prior

to his death, but for which patent thereafter issued to his heirs; and that one-seventh of said land descended to Kizzie Long, his wife, and the remaining six-sevenths to the other of his heirs above set forth under the laws of the Creek Nation.

The petition further states that on March 3, 1902, Joshway Long died intestate after receiving his allotment of 160 acres (described), leaving no wife, child, or children, or their descendants, but leaving him surviving plaintiff, his mother, Kizzie Long, also Ellen Robinson, Loday Long. Hannah Long, Thomas Long and Coley Long, his brothers and sisters; that on the death of said Joshway, the title to his allotment descended to petitioner, Kizzie Long, either in fee simple or for life, with fee-simple title thereto in plaintiffs Ellen Robinson and Loday Long, and to Thomas Long, Hannah Long and Coley Long, under the act of Congress of June 30, 1902.

It is further alleged that on June 23, 1907, Hannah Long died intestate, after receiving her allotment of 160 acres of land (described), leaving her surviving one child, who died the next day, and a husband, Jackson McGirt, who died the next year intestate, without wife, child, or children, or their descendants; that upon the death of said Hannah, the lands thus allotted to her descended to her child as an ancestral estate, and upon the death of the child, in equal parts to plaintiffs and the said Thomas Long and Coley Long, to the exclusion of her husband and his heirs; that on August 2, 1909, Thomas Long died sole and intestate, leaving surviving no child, or children, or their descendants, leaving him surviving as his only heir-at-law the plaintiff Kizzie Long, his mother, "to whom alone all the right, title, and interest of said Thomas Long in and to said lands allotted to said Sam Long, Joshway and Hannah

Long, as aforesaid, descended"; that on February —, 1913, Coley Long died intestate, without child, or children, or their descendants, leaving him surviving his widow, Wisey Long, to whom, on the death of Coley, "one-half of his allotments and one-half of his right, title, and interest in and to said lands of Sam Long, Joshway Long and Hannah Long descended to plaintiff Kizzie Long, and the remaining one-half descended to his wife, the said Wisey Long," who is also a member of the Creek tribe of Indians duly enrolled as such.

The petition further alleges that on May 18, 1910, the defendant McFarlin took an instrument purporting to be a deed, executed by plaintiff Kizzie Long, purporting to convey to him a great portion of said lands for a recited consideration of $1 and other valuable considerations, which was duly recorded and filed as an exhibit to the petition, and on January 11, 1911, took another instrument in writing from plaintiffs Kizzie Long and Loday Long "for all the lands allotted as aforesaid to the heirs of Richard Long, to said Sam Long, Hannah Long, and Joshway Long, except the interest therein of Ellen Robinson and Coley Long," for a recited consideration of $3,455.35, purporting to have been paid cash in hand, "but which was not so paid at the time of the execution thereof, nor has the same been paid at any time since said date or otherwise"; that said deed has been duly recorded; that the last-named deed purports to have been approved by the county court of Hughes county on January 13, 1911, and the approval duly admitted to record; "that said last-named instrument was taken in part consideration of and for said first-named instrument, and the consideration therefor was never all paid to the grantors therein named."

The petition further alleged that the prior instrument was taken pursuant to a contract made and entered into

by and between said grantors and McFarlin long prior to the date thereof, and that, after the same was delivered to McFarlin, he took possession of the lands described in the second instrument, all of which comprise 640 acres, and has continuously kept possession and control thereof, receiving the rents and profits arising therefrom after May 18, 1910, without accounting therefor, all of which it is alleged amounted to $1,000, and that same is now due and unpaid plaintiffs and defendant Wisey Long in the proportion each now owns the land; that both of said purported deeds are, void, and the approval thereof likewise void (for certain reasons stated in the petition) and for that reason the county court of Hughes county was without jurisdiction in the premises. By reason of all of which, plaintiffs say they are entitled to the immediate possession of said lands which are wrongfully withheld from them by McFarlin. Wherefore they pray that said deeds may be set aside and for partition of the lands, that a receiver be appointed, and that they have judgment against McFarlin for the rents and profits and for costs.

From all of which it seems the theory of plaintiffs' case is that, as all these allottees were full-bloods, neither they nor their heirs could convey their lands for 25 years from April 26, 1906, and, as to nearly all of them descent was cast prior to the act of May 27, 1908 (35 Stat. 312, c. 199), the county court was without jurisdiction to approve the deeds complained of, and hence the same were void and should be set aside, and, besides, were unsupported by consideration.

If the court erred in sustaining the motion of defendants to require plaintiffs to make their petition more definite and certain by showing the date of the selection of the allotments of Richard Long and Sam Long, the error was

harmless, as was also his action in overruling plaintiffs' motion to strike defendants' said motion from the files. As the allegation in paragraph 8 of the petition, referring to the last deed, that "the consideration therefor was never paid to the grantors therein named," and the allegation in same paragraph, referring to the recited cash consideration for that deed, "but which was not so paid at the time of the execution thereof, nor has the same been paid at any time since said date or otherwise," were foreign to plaintiffs' theory of their case and unnecessary in the statement of the cause of action in view of that theory, the same were surplusage, and hence the court did not err in striking them as he did.

But there were two deeds executed on different dates and, as plaintiffs' theory of the case was not so clear, and might have been that the first was illegal and that the taint of illegality therein entered into the second deed, defendants' counsel was anxious to know precisely what plaintiffs meant when in the same paragraph they alleged:

"That said last-named instrument was taken in part consideration of and for said first-named instrument, and the consideration therefor was never all paid to the grantor therein, and said first-named instrument was made and taken in pursuance to a contract made and entered into by and between said grantor and said McFarlin long prior to the date thereof."

And so they filed their motion to require plaintiffs to make the same more definite and certain, to state—

"in what respect said last-named instrument was taken in part consideration of and for said first-named instrument, and state if said first-named instrument was made and taken in pursuance of a written or oral contract, and, if written, to attach a copy to their petition, and, if oral, to set forth the date and the terms thereof and parties thereto."

Which the court sustained, whereupon plaintiffs obtained leave to amend the paragraph, which they undertook to do "as directed by the court," by filing some ten pages of typewritten matter containing eight paragraphs, and, if it conformed to the order of the court, such was not made clear to him, for on motion he struck it from the files. And, for the reason that neither has it been made clear to us, we hold the court was right.

As counsel for plaintiffs in error have cited no authority in support of any assignment of error in their 57-page brief and we can find none, and as there is no merit in the remaining assignments of error, the judgment of the trial court is affirmed, with instructions to the trial court to proceed pursuant to the views herein expressed.

All the Justices concur.